IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TALAYNA CLEMENTS | ) | |
| 3512 CLAY PLACE, NE | ) | |
| WASHINGTON, DC 20019 | ) | |
| Plaintiff, | ) | Case No.: |
| v. | ) | |
| | ) | |
| JAMES TRU REDDING | ) | |
| 2127 QUEENS CHAPEL ROAD, NE | ) | |
| WASHINGTON, DC 20018 | ) | |
| and | ) | |
| KEITH FORNEY | ) | |
| 2127 QUEENS CHAPEL ROAD, NE | ) | |
| WASHINGTON, DC 20018 | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Talayna Clements a/k/a exotic dancer "Casey" ("Plaintiff"), by and through undersigned counsel hereby submits her Complaint against Defendant James Tru Redding and Keith Forney, ("Defendants") to recover unpaid wages and statutory damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and for unpaid wages, interest, reasonable attorney's fees, and costs under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.* (hereinafter, "DCMWA").

## PARTIES AND JURISDICTION

1. Plaintiff is an adult resident of the District of Columbia.  At all times relevant, Plaintiff performed work duties as an exotic dancer at Defendant's Stadium Club exotic dance club in Washington, D.C.

1

2.  The Stadium Group, LLC is a limited liability company formed under the laws of the District of Columbia with its principal place of business located in Washington, D.C.

3.  At all times, Stadium Group, LLC has done business as The Stadium Club, advertising itself to the public as an exotic dance club featuring nude and semi-nude exotic dancers. Defendants James Tru Redding and Keith Forney are the Owners and Managers of The Stadium Group, LLC that set and enforced the rules. At all times during Plaintiff's employment with the The Stadium Group, LLC Defendants Redding, and Forney were Owners/Managers of Stadium Group, LLC, Defendant's were responsible for setting the rules that Plaintiff was required to follow and determined Plaintiff's rate and method of pay. At all times Defendants had the power to hire and fire, control work schedules and supervise employees, determine pay rates, and maintain employment records. Defendants Redding and Fornay have acted directly or indirectly in the interest of the Employer in relation to employees at Stadium Club. Defendant Keith Fornay and Defendant Tru Redding had operational control over The Stadium Group, LLC and were involved in the day to day operation of the Stadium Club. The Defenants have some direct responsibility of the supervision of employees at the Stadium Club. At all times relevant, Defendants were Plaintiff's "employers" for purposes of the FLSA and DCMWA.

4.  At all times, Defendants were Plaintiff's "employer" for purposes of the FLSA and DCMWA.

5.  At all times, Defendants were engaged in commerce or in production of goods for commerce within the meaning of §3(s)(1) of the FLSA (29U.S.C. §203 (s)(1)).

6.  At all times, Defendants qualified as an "enterprise" within the meaning of §3(r) of the FLSA (29 U.S.C § 203 (r)).

7.  At all times, Plaintiff was an individual employee engaged in commerce or the production of

2

goods for commerce as required by 29 U.S.C.§§ 206-207.

8. This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C§ 216(b), and 28 U.S.C § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce." Subject matter jurisdiction was invoked under 28 U.S.C § 1331 (Federal Question) Venue in this Court is proper pursuant to 28 U.S.C § 1391.

### FACTS

9. Plaintiff was employed by Defendants as an exotic dancer from about February 7, 2012 through about March 31, 2012.

10. The Manager Damian Ward would stick his tongue out in a sexual manner at Plaintiff and other woman, make sexual comments and say "when can I come over your house" in front of upper management and Defendant owners of the Stadium but no action was taken by them even though Plaintiff and the other women clearly rebuffed his actions and wanted him to stop that behavior.

11. On about April 1, 2012 Defendants terminated Plaintiff's employment citing Plaintiff's subjectively undesirable tattoo as cause for termination.

12. After Defendants' termination of Plaintiff's employment, Plaintiff continuously contacted Defendants requesting to be re-hired. Defendants through its Manager, continued to refuse to re-hire Plaintiff but implied that if Plaintiff would engage in certain sexual activities with Defendants' manager, Defendants would re-hire Plaintiff.

13. Plaintiff refused to engage in sexual activities with Defendants' manager and, eventually on or about May15, 2012, Defendants re-hired Plaintiff as an exotic dancer and she continued to work there where she was sexually harassed by Damian Ward until December 2012.

14. During the period of Plaintiffs employment, Plaintiff regularly and customarily worked about

five(5) or more nights per week calculating to approximately forty-five (45) or more hours per week.

15. At all times during the period of Plaintiff's employment, Defendants had knowledge that Plaintiff typically worked about forty-five (45) or more hours per week and suffered or permitted Plaintiff work about forty-five (45) or more hours per week.

16. At all times throughout Plaintiff's employment with Defendants, Defendants totally failed to pay Plaintiff any wages for work duties performed.

17. At all times throughout Plaintiff's employment with Defendants, Plaintiff was an employee of Defendants and was never an independent contractor.

18. While it is true that Defendants titled or classified Plaintiff as an independent contractor, at all times while working for Defendants, Plaintiff considered herself an employee of Defendants and that Defendants were Plaintiff's employers.

19. At all times Plaintiff was employed by Defendants, Defendants controlled all aspects of Plaintiff's job duties through strictly enforced employment rules.

20. Defendants hired Plaintiff and , at all times, had the ability to discipline Plaintiff, fine Plaintiff, fire Plaintiff, and adjust Plaintiff's schedule.

21. Defendants at all times, supervised Plaintiff's work duties to make sure Plaintiff's job performance was of sufficient quality.

22. At all times while Plaintiff was employed by Defendants, Plaintiff's pay and opportunity for wages was limited to Plaintiff's pay method set exclusively by Defendants.

23. Defendants controlled all aspects of setting and enforcing Plaintiff's work schedule.

24. Plaintiff was never able to make more money or enjoyed more financial benefits if

Defendants were operating successfully and realizing increased or additional profits.

25. At no time did Plaintiff make a financial investment in Defendant or any equipment belonging to Defendants.

26. To perform the work duties that Plaintiff performed for Defendants, Plaintiff did not have or need any required certificate, education, or specialized training.

27. At all times while Plaintiff was employed by Defendants, Defendants were in the business of operating a night club featuring exotic dancers and at all times it was Plaintiff's job duty for Defendants were directly related to exotic dancing performances for Defendants' customers.

28. Plaintiff did not perform work that is exempt from the minimum wage or overtime requirement of the FLSA or DCMVA.

## FEES, FINES, AND CHARGES

29. In addition to failing to pay Plaintiff wages for hours worked, Defendants enforced a series of fees and fines requiring Plaintiff to actually pay Defendants a significant portion of the money Plaintiff received as tips from customers.

35. On a typical shift, Plaintiff actually paid Defendants, through fines, fees, and charges, approximately two hundred fifty dollars ($250.00) or more.

36. The fines and fees paid by Plaintiff to Defendants included, but were not limited to :

a)  A mandatory "tip-in" by Plaintiff to Defendants, per shift ranging from $33.00-$100.00 (or more if Defendant was hosting a special event);

b)  A mandatory "tip-out" by Plaintiff to Defendants' disc jockeys, House Mom, and security ranging from $50.00-$60.00;

c) A mandatory tip sharing of Plaintiff's on-stage and table dance tips to Defendants' "floor-

5

man," ranging from $10.00-$20.00 per table dance or stage appearance;

d) A mandatory fine for calling out of work for sickness or other personal reasons ranging from $30.00 with a doctor's note to $60.00 or more without a doctor's note;

e) Strictly enforced fines for violating club rules ranging from $100.00-$300.00 per violation; and

f) A mandatory sharing and assignment by Plaintiff to Defendants of all tips and monies received by Plaintiff from Defendants' customers for each performance of private and semi-private dances.

37. The net result of Defendants' fee and fine system was that Plaintiff's regular hourly rate was actually properly calculated in the negative.

## CAUSES OF ACTON
## COUNT I
**Violation of Federal Fair Labor Standards Act**
**(Minimum Wage)**
**(ALL DEFENDANTS)**

38. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-37 above as if each were set forth herein.

39. Section 206 (a)(1) of FLSA provides that no employer shall employ any employee for an hourly wage of less than the federal minimum wage, currently $7.25 per hour.

40. At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C §206(a(1)

41. At all times, Defendants were Plaintiffs "employer" under the FLSA.

42. Defendants, as Plaintiff's employer, was obligated to compensate Plaintiff for all hours worked at an hourly rate not less than the Federal Minimum Wage.

43. At all times, Defendants paid Plaintiff no wages for hours worked.

6

44. More exactly when the fees and fines that Defendants deducted from Plaintiff's tips and personal monies are factored in, Defendants paid Plaintiff a net average hourly rate equal to approximately negative Twenty Seven Dollars and Seventy-Eight Cents (-$27.78) per hour.

45 At all times relevant, Plaintiff's net negative hourly rate fell below the applicable Federal Minimum Wage.

46. The FLSA allows employers to pay less than minimum wage to employees who receive tips...The mechanism it creates to allow employers to pay less than minimum wage is the "tip credit." See 29 U.S.C.§ 203(m)).

47. Employers may only take a tip credit if certain requirements are met. See 29 U.S.C § 203 (m). Namely, (1) the employer must give the employee proper notice of taking a tip credit; (2) the employee must retain all of her tips except for those lawfully shared with other employees; and (3) the employee, through her tips, must make up the difference between the tipped minimum wage and full minimum wage-if she does not, the employer must pay her the difference in wages. See id; 29 C.F.R. §531.59.

48. Here, Defendants did not give Plaintiff any notice that it was taking or intended to take the tip credit.

49. Here, Defendants (because it took and kept for its own use) a portion of Plaintiff's tips, as a consequence, Plaintiff did not retain all of her tips received from Defendants' customers.

50. Here, Defendants (because it took and kept for its own use) a portion of Plaintiff's tips, as a consequence, Plaintiff did not retain all of her tips received from Defendants' customers.

51. Here, Defendants failed to pay Plaintiff the difference between the minimum wage and the amounts Plaintiff received from tips on nights where Plaintiff's tips did not meet or exceed the minimum wages.

52. Because the three (3) "tip credit" requirements were met by Defendants, Defendants

cannot avail itself of the FLSA's "tip credit" in calculating back wages owed to Plaintiff.

53. Defendants have failed and refused to compensate Plaintiff at an hourly rate at least equal to the Federal Minimum Wage as required by the FLSA for numerous hours worked.

54. Defendants' failure and refusal to pay compensation to Plaintiff as required buy the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Plaintiff asks this court to Declare the actions of as described in the preceding paragraphs to be unlawful employment practices in violation of the laws of United States and hold Defendants liable to Plaintiff under Count I for unpaid minimum wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), punitive damages, attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate and enter a judgment against Defendants.

## COUNT II
### Violation of Federal Fair Labor Standards Act
### (Overtime)
### (ALL DEFENDANTS)

55. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-54 above, as if each were set forth herein.

56. Section 207(a)(1) of the FLSA provides that no employer shall employ any of its employees for a work week longer than forty (40) hours unless such employee receives compensation for her employment is excess of the hours above specified at a rate not less than the higher of one-and-one-half (1.5) times the regular rate at which she is employed or one-and-one half times the Federal Minimum Wage.

57. At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1), and

Defendants were Plaintiff's "employer" under FLSA, 29 U.S.C. § 207(a)(2).

58. Defendants, as Plaintiff's employer, were obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1.5) times the higher of Plaintiff's regular rate of pay or the applicable federal minimum wage for all hours worked per week in excess of forty (40).

59. As set forth above, while in Defendants' employment, Plaintiff typically and customarily worked about five (5) or more hours of overtime, each week.

60. As set forth above, Defendants failed and refused to compensate Plaintiffs properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40). Defendants' failure and refusal to pay Plaintiff as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith.

61. Defendants have failed and refused to compensate Plaintiff as required by the FLSA for numerous hours worked. This failure and refusal to pay compensation as required by the FLSA was willful and intentional, and not in good faith and done with actual malice.

WHEREFORE, Plaintiff asks this court to Declare the actions of as described in the preceding paragraphs to be unlawful employment practices in violation of the laws of United States and hold Defendants liable to Plaintiff under Count II for unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), punitive damages, attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate and enter a judgment against Defendants.

**COUNT III**
**DCMWA**
**(Minimum Wage and Overtime)**
**(ALL DEFENDANTS)**

62. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-61 above, as if each were set forth herein.

63. Plaintiff was an "employee" and Defendants were Plaintiff's "employer" within the meaning of DCMWA.

64. As Plaintiff's an "employer," Defendants were obligated to pay Plaintiff wages at least equal to $8.25 per hour, the District of Columbia Minimum Wage and overtime compensation at the rate of not less than the higher of one-and-one-half (1.5) times the higher of Plaintiff's regular hourly rate of pay or the District of Columbia Minimum Wage for all hours worked in excess of forty (40) hours in any given workweek.

65. As set forth above, while in Defendants employ, Plaintiff worked many non-overtime and overtime hours for which Defendants failed and refused to properly compensate Plaintiff as required by the DCMWA for all non-overtime and overtime hours worked.

66. Unpaid minimum wage compensation and overtime pay is therefore due owing to Plaintiff under DCMWA.

67. Defendants' failure to comply with its obligations under DCMWA to pay Plaintiff for all hours worked as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable to Plaintiff under Count III, for all unpaid and/or improperly deducted wages in such amounts to be proven at trial, plus two (2x) times the amount of unpaid and/or improperly deducted wages as additional damages, interest (both pre- and post-judgment), attorney's fees, costs, punitive damages and any other further relief this Court deems appropriate.

## **JURY DEMAND**

68. Plaintiff demands a trial by jury.

                Respectfully submitted,

                ___/s/_____
                J. Wiggs, Esq.
                The Wiggs Law Group, LLC
                9701 Apollo Drive, Suite 301
                Upper Marlboro, MD 20774
                240-326-3711
                Bar#MD18231
                Counsel for Plaintiff